STATE OF IOWA, Appellant, v. FRANK HESS, Appellee.

**BASTARDS:** Bastardy Proceedings—''Not Guilty''—Taxation of
1  **Costs.** There must be statutory authority for the taxation of costs. Therefore, one who signs and verifies a complaint in bastardy entitled ''State of Iowa vs. ......,'' as required by Sec. 5629 of the Code, the county attorney prosecuting as commanded by Sec. 5633 of the Code, and the prosecution failing, is not liable for cost. Such a person is not a party to such proceeding within the cost statute, Sec. 3853 of the Code, providing that the successful party shall recover costs against the losing party.

**WITNESSES:** Falsus in Uno, Falsus in Omnibus—Conflict of Evi-
2  dence—Singling Out Witness. The sole fact that the testimony of witnesses is in conflict affords no basis for arbitrarily singling out the testimony of one particular witness to the conflict and applying thereto the rule of evidence: ''*Falsus in uno, falsus in omnibus.*''

**TRIAL:** Instructions Fundamentally Erroneous—Necessity for Re-
3  quest. The error of the court in giving an instruction fundamentally wrong is not waived by the failure of the party injured thereby to ask a correct one.

**BASTARDS:** Instructions—Invading Province of Jury. It is funda-
mental that instructions must not invade the clear province of the
jury to pass on disputed questions of fact. Instructions reviewed
in bastardy proceeding and held to practically withdraw from the
jury the question of defendant's guilt, and therefore erroneous
under the state of the record.

**TRIAL:** Evidence—Natural Incidents of Case—Admissibility. Mat-
ters which are the natural incidents of a case are properly re-
ceived.

PRINCIPLE APPLIED: Bastardy proceeding. Defendant,
without objection, testified that he was married. He was then
permitted to testify when he was married and that his former
wife died twelve years ago. *Held,* being mere incidents of the
case, plaintiff could not justly complain.

*Appeal from Howard District Court.*—HON. A. N. HOBSON,
Judge.

TUESDAY, JANUARY 19, 1915.

REHEARING DENIED SATURDAY, MAY 15, 1915.

APPEAL from a judgment on a verdict of not guilty in
a bastardy proceeding, and from a judgment against com-
plainant for costs.—*Reversed.*

*George Cosson,* Attorney General, *John Fletcher,* As-
sistant Attorney General, *Joseph Griffin,* County Attorney,
and *Reed & Pergler,* for appellant.

*John McCook* and *Frank Sayre,* for appellee.

SALINGER, J.—Proceeding in bastardy. The complaint
is entitled State of Iowa vs. Frank Hess, and signed and veri-
fied by one Canfield, the mother of the girl, for the mainte-
nance of whose child said proceeding was instituted. Verdict,
not guilty. It is one complaint that the costs of trial were
taxed to said Canfield.

I. The mother of the bastard will be referred to as the
girl. Appellee relies on *McAndrew v. Madison County,* 67

Iowa 54, to sustain this taxation. In that case complaint was

**1. Bastards:** filed without authority from the district at-
bastardy pro-   torney; he first learned of it after it was
ceedings:
"not guilty":   filed, and he asked at the time of trial "to
taxation of
costs.          be relieved from assisting in the trial, which
was acceded to by counsel for complainant, who tried and
managed the case upon the part of the plaintiff." The case
at bar has been and is being prosecuted by the proper officers
of the state. While, abstractly, this difference might not be
controlling, it does require consideration here. The right
to recover costs rests on express grant, and whenever a prior
judicial construction is invoked to enlarge such right, the
judiciary is strongly inclined to confine the prior judicial
allowance to the record facts of the case in which the allow-
ance was made. This difference, then, does have material
bearing here. *McAndrew's case* may well have been con-
trolled by the thought that the county should not be liable
for costs where, by the consent of all concerned, the public
authorities retired, and the case was completely surrendered
to private management.

If we assume that this difference will not warrant us
in excluding *McAndrew's case* from our consideration, we
yet may not give it an effect beyond what it decides. Stripped
to its essentials, it declines to let a sheriff who served sub-
poenas in a bastardy suit which failed, recover costs of the
county, upon the express ground that "It is very plain that
the county is not liable for costs under Sec. 3790 (512) of
the Code, for the simple reason that the proceeding is not a
'criminal case.'" It is not liable as a party in interest.

It decides that the county is not liable, not who is. A
hundred judicial decisions confined to declaring that par-
ticular parties are *not* liable for particular costs would not
determine that other parties are. So far as *McAndrew's case*
is concerned, then, the question whether the taxation at bar
can be sustained is left open.

"At the common law costs were not recoverable *eo nomine.* Costs can, therefore, be imposed and recovered only in cases where there is statutory authority therefor. While the power to impose costs must ultimately be found in some statute, the legislature may, nevertheless, grant the power in general terms to the courts which, in turn, may make rules or orders under which costs may be taxed and imposed; but the courts cannot make such rules or orders and impose costs thereunder unless the power to do so is expressly given them by statute." 11 Cyc. 24.

The *McAndrew case* attempts no broadening of this rule, and itself declares that "no official fees can be allowed except such as are expressly authorized by law."

The only statute warrant for the allowance of costs is Code Sec. 3853, that "costs shall be recovered by the successful against the losing party."

It follows that this taxation cannot be sustained unless we may find that Canfield was "the losing party." This question, too, we must resolve without aid from *McAndrew's case.* It decides nothing on this head except that the county is not such party, makes no attempt to say who is, and it rules that "no person can be compelled to pay costs in civil cases except parties to actions."

Meeting, then, the question whether Canfield is a party within the meaning of the cost statute, we find our Code to require that "The proceedings shall be entitled in the name of the state against the accused, as defendant," (Code 5629) and that (Code 5633) the county attorney is required to prosecute the matter in behalf of the complainant.

To hold that in a cause required to be entitled in the name of the state, which its officers are required to prosecute and manage, and which they do prosecute and manage, one who has signed and verified the complaint upon which they act thereby becomes a party to the bastardy suit within the meaning of the costs statute, would in our opinion do

violence to the letter and spirit of the statute. We reach this conclusion the more readily because the law deals strictly with the recovery of costs.

It is quite possible that if *McAndrew's case* is to rule, the present decision will leave the costs of a bastardy suit which fails unprovided for. But that is a matter for the legislature. We are not at liberty to impose costs upon particular persons merely because, else, services rendered would not be paid for. No recovery against a county is involved, wherefore we have no occasion to pass on whether the rule of the *McAndrew's case* is sound. Nor have we to decide whether costs, such as are involved in the present case, may be recovered at all. What we do decide is that the taxation involved is erroneous, even if such costs may not be recovered from the counties, and even though no provision may have been made for obtaining such costs, and that neither this situation or anything else is warrant for taxing these to Canfield.

II. In instruction eight, the jury is permitted to disregard the testimony of the girl if it believes from the evidence that she "knowingly, intentionally or wilfully testified falsely that defendant was present at the time she testifies she had sexual intercourse with him" and so believes "that at such time he was not in Cresco."

2. WITNESSES: *falsus in uno, falsus in omnibus:* conflict of evidence: singling out witness.

The additional statement that it is the sole judge "of whether her testimony has in this manner been destroyed, and will give it such, if any, consideration you believe it entitled to," merely makes plain that while the jury has the power to destroy this testimony if it believes as aforesaid, it is not compelled to exercise that power.

We have to decide whether the contention that this constitutes an improper discrimination against her testimony is sound.

We may concede that a record could furnish a foundation for the charge herein complained of, and appellee urges that *State v. Smith,* 61 Iowa 538, justifies its giving here.

In that case we said: "We also think that the jury should have been instructed that if they believed the defendant had established he was not at home, or in the house, the night the alleged intercourse took place, and they believed the child was then begotten, they must find for the defendant, and, further, that his absence, if found to be true, was sufficient to warrant them in disregarding the whole of the evidence of the prosecutrix."

On the surface, this instruction authorizes disregarding all the testimony of prosecutrix if the jury believed the defendant had proven that he was not present at the time the child was begotten. But an examination of the case discloses that while the instruction is sound upon the whole record, it reaches the correct result on wrong lines. That record shows not alone that there was a naked conflict as to an alibi, but that the prosecutrix gave an account of the circumstances attendant upon the alleged acts of intercourse which is so utterly violative of reason and contrary to common knowledge as to afford a complete justification for submitting whether any of her testimony was worthy of credence. Instead of using the whole record as the basis for an instruction which that record justified, the instruction sets out but part of that record, and so bases itself on what does not warrant the instruction when it might have embodied a sufficient premise for the charge.

If *Smith's case* exhibited nothing but a difference as to where defendant was at a given time, that instruction might rule us now. But as seen, the *Smith case* so differed from this case in facts as that we have the question open, whether the mere fact that a witness differs from another warrants his being singled out by an instruction like the one at bar. For the case we are considering has nothing which warrants instruction eight, unless the fact that witnesses conflict is sufficient warrant.

The girl testifies that defendant had connection with her in Iowa, first within two or three days after August 15th

and next within a week or two thereafter. Roughly, this asserts intercourse here about August 18th and about September 1st. Others put defendant into Minnesota from August 8th on, until his arrival in Cresco on August 26th. Later, we shall consider whether this creates a conflict at all. See *Wendt's case*, 161 Iowa 122. But if we assume it does make one, does a record which at most exhibits such conflict warrant so singling out one side to the conflict? It seems to us an impossibility in logic to justify the disparagement of just one of two disputants because the one disparaged disputes the other. If such conflict authorizes the destroying of the testimony of the one, why does not fairness require a charge that it may have like effect upon the testimony of the other? If there was anything in the record to justify this instruction, it is equally justified as to those who disputed the girl. She was no more contradicted than contradicting. If her testifying that defendant was in Iowa may operate to impeach her because others say he was in Minnesota, then it was an arbitrary discrimination not to say that their testifying he was in Minnesota, though she said he was in Iowa, might operate to destroy the testimony of those who contradicted her. We find nothing to indicate that either witness swore to an untruth wilfully or intentionally, and are unwilling to hold that a clash in testimony is of itself sufficient for submitting such an instruction as was here given. But if such clash does suffice, it required the instruction to deal alike with all parties to such conflict. Nor should it be said that this singling her out was not arbitrary because the verdict shows she was not believed. It does not follow more was found than that she was honestly mistaken. And to claim more for it takes advantage of the very wrong done by the instruction. Where the trial judge declares there is occasion to inquire whether one witness has committed perjury as to where defendant was at a given time and that such inquiry permits the jury to disregard her testimony, and he is silent as to those who gave opposing testimony on the point, it

tends, at least, to greatly increase the chance of its being determined that the one singled out has wilfully sworn falsely. This one-sided charge had, as it seems to us, a tendency to eliminate a finding that the girl had merely fallen into error on dates, and it tended to prevent a finding that defendant was guilty although it appeared that intercourse was not had at the precise time fixed by her, if she fixed any precise time. And we are constrained to say that this was not cured by saying confusedly in another instruction (seven), that (1) the material question is whether defendant is the father of the child "as charged"; (2) that the precise day on which the child was begotten is not material, and (3) that it is not material what is the precise day of its begetting, providing it is believed from a preponderance that the intercourse was had "at a time within which pregnancy actually occurred, and that defendant is the father of the child." We feel that this language which, in part at least, is difficult to understand, did not offset nor affect greatly the clear-cut statement, that if the girl wilfully swore falsely that "defendant was present at the time she testifies she had intercourse with him and you believe from the evidence that at such time he was not at Cresco," it would justify "disregarding her testimony."

And the rule estopping complaint where no charge is requested has no application. That applies only where the charge is correct, but might well be amplified, clarified or

3. TRIAL: instructions fundamentally erroneous: necessity for request.

more closely limited in application. If this instruction be erroneous at all, it is because it has no foundation in the record upon which to rest; and an appellant may take advantage of an erroneous instruction, though he did not offer one which if given would have corrected the error.

4. BASTARDS: instructions: invading province of jury.

III. An analysis of instructions seven and eight is necessary if the two are to be construed together. We think they should be so construed, if that be possible. Such analysis is not alto-

gether easy, but we think the following is a reasonably exact statement of these two instructions.

1. The material question is whether defendant is the father of the child "as charged."

2. While the precise day on which the child was begot is not material, this (its being immaterial) is so "providing" it is believed from a preponderance that intercourse was had "at a time within which pregnancy actually occurred and that defendant is the father of the child."

3. Find the defendant not guilty if the evidence shows he was not at Cresco "at the time Catherine Canfield alleges she had sexual intercourse with the man by whom and at the time she became pregnant."

4. If the evidence satisfies that she wilfully swore falsely that defendant "was present at the time she testifies she had sexual intercourse with him and you believe from the evidence that at said time he was not in Cresco," her testimony may be disregarded *in toto.*

This resolves into the following ultimate propositions:

1. Prosecutrix has alleged a time at which she became pregnant.

2. If defendant was not present at the time so fixed, the verdict must be in his favor.

This necessitates inquiry (1) when, if at all, did the girl fix the time of her conception, (2) what is there to show that defendant was away from her at the time she fixes, if she does fix such time, and (3) does it follow, as matter of law, that if she fixed such time and defendant was away at that time, defendant must be acquitted?

Under the testimony of and for the girl the jury could find that the first act was "during the latter part of August, 1912"; that it was two or three days after August 15th, and "not more than two or three days" after; that it was "five or six days after the 15th of August"; that the next succeeding act was about a week or two following two or three days after August 15th; that it followed in a week or two there-

after; that it was within a week thereafter; that illicit acts continued to the extent of five, six or seven times, and up to Christmas in 1912, and that the woman never had such commerce with any man other than defendant.

On the other hand, the jury might find that the defendant was constantly in Minnesota from August 8th up to about August 26, 1912, at which later time he returned to Cresco, and that he never had illicit relations with the woman. It is the testimony that the girl had her menses, she thinks, either the first or second week in August, 1912, and that the first time she missed her period was in September following.

It is plain that so far as fixing the times of intercourse goes, these could have occurred about August 18th, about September 1st, and consisted of from five to seven acts between September 1st and Christmas following. It is equally plain that pregnancy occurred sometime between the first and second weeks in August and sometime in September, and though it be found that defendant was away from August 8th and did not reach Cresco until August 26, 1912, it was, of course, possible for him to impregnate the girl on that day, or on September 1st, or in any of the other alleged acts occurring at some time between September 1st and Christmas. The child was born on May 20, 1913. It is testified that the usual term of gestation is 280 days from the last period. It is testified, and is common knowledge, that this varies, at least a few days. It appears that the girl was at work and that this often shortens the period of gestation. As said, even if the alibi was believed, the jury could find that intercourse was possible on August 26, 1912, between which and May 20, 1913, when the child was born, are 267 days. Notwithstanding that 280 days is the average or usual time, it is no impossibility that this gestation used 13 days less.

In the last analysis, the effect of the instructions is, that if a woman says her catamenia last appeared in the first or second week of August, that she had intercourse about August 18th, and about September 1st, that she missed her period

first in September, and that a child was born in 267 days after August 26th, defendant must prevail if he shows he did not have access to her between August 8th and August 26th. It amounts to holding, (1) that if the girl says there was intercourse about August 18th, and defendant shows he was away until August 26th, then defendant prevails, as matter of law; (2) if she fixes the act at about September 1st, defendant goes free by showing that though he was present then, he was absent up to four days earlier than September 1st; (3) and that a child born on May 20th cannot be the result of intercourse had between August 26th and September 1st preceding. We cannot assent to these. We think it was for the jury whether there was intercourse, when, and whether the child was the result of it, and that this is so, though the girl may have fixed the times of intercourse erroneously. It was not essential that they should have occurred at some particular time. (See *Wendt's case, supra.*) The instructions so say, yet, as a whole, they rule the contrary.

In *State v. Bell,* 49 Iowa, at 441, 442, the prosecutrix testified quite positively that the crime of defendant was consummated on the 7th day of July, the time charged in the indictment, at the house of a person named by her. The defendant introduced evidence tending to prove that he was not at the house named within three or four days of the time fixed by the prosecutrix. The instructions given to the jury were to the effect that if they found the crime had been committed on another day, yet within the time prescribed by the statute limiting indictments in such cases, it would be sufficient to authorize conviction. This instruction, and others, which left to the jury the determination of the time of the offense, are made the grounds of objection. We said:

"The error of counsel, in presenting these points, is this: They hold the jury bound to accept the testimony of the defendant's witnesses as conclusive as to defendant's absence at the time named, and that, if he was absent, the testimony

of the prosecutrix must be disregarded, and cannot be corroborated because of her error or mistake as to the day upon which the crime was consummated. But the jury were correctly required to reconcile this conflict of evidence, which may have been done by disregarding the testimony of defendant's witnesses, or by accepting it and finding that the prosecutrix had been innocently mistaken as to the precise day of the commission of the crime.''

In *State v. White,* 99 Iowa 46, a verdict finding against an alibi, established in part, at least, by reputable witnesses, is sustained because, among other reasons, these reputable witnesses ''may have been mistaken.''

IV. Defendant testified without objection that he was married. Being then asked when he had been married, he answered, over objection that it was incompetent and immaterial, that it was on May 14, 1913, which is

5. TRIAL: evidence: natural incidents of case: admissibility.

a day subsequent to the alleged act, and over the same objection he testified that his former wife died twelve years ago. This admission of testimony is objected to now on the ground that it was of a character to arouse the sympathy of the jury. Without the asking of these questions, it had appeared that defendant had visited his daughter, and therefore, presumptively, that he was a married man. The questions on this subject were natural incidents of the case, and in view of the whole record we find that there was no error in admitting the answers.

For the matters stated in divisions I, II and III of this opinion, the judgment of the district court must be and is reversed, and the cause remanded for a new trial.—*Reversed.*

DEEMER, C. J., LADD and GAYNOR, JJ., concur.