JOE RUSSELL, Appellee, v. W. A. LESCHENSKY et al., Appellants. No. 43950.

DECEMBER 14, 1937.

REHEARING DENIED APRIL 8, 1938.

Estey & Estey and E. P. Shea, for appellee.

Carl F. Jordan and Charles W. M. Randall, for appellants.

DONEGAN, J.—Paved Highway No. 18 runs in a northeasterly and southwesterly direction through the town of Clermont in Fayette county, and is also known as Mill street in said town. Near the north edge of the town said highway is intersected at right angles by a road or street known as Iowa street. About five o'clock on the afternoon of September 1, 1934, the plaintiff, Joe Russell, accompanied by Arnold Larson, was driving a Model A Ford sedan in a northwesterly direction on said Iowa street toward its intersection with the paved highway and had reached a point on the pavement and the Ford sedan was struck by a Chevrolet truck owned by the defendant, W. A. Leschensky, doing business as Waukon Bottling Works. As a result of this collision Russell was thrown from the automobile onto the pavement and received injuries for which he asks damages in this action.

The petition filed by the plaintiff alleged several grounds of negligence, but only two of these grounds were submitted to the jury by the trial court. The answer filed by the defendants consisted of a general denial. The case was tried to a jury, which returned a verdict in favor of the plaintiff for $5,230. In due time the defendants filed exceptions to instructions and motion for new trial. On hearing, the court ordered that the

336

verdict should be reduced to $3,800 and costs, and that, unless plaintiff consented to such reduction, a new trial would be granted. Plaintiff filed a remittitur consenting to reduction as ordered by court, and judgment was entered in favor of the plaintiff and against the defendants for $3,800 with interest and costs. From this judgment and verdict, and from all adverse orders and rulings of the trial court, the defendants appealed. The appellants allege error on the part of the trial court on three separate grounds. We shall consider these alleged errors in the order in which they have been alleged and argued.

I. The first ground of error relied on for reversal is:

"The Court erred in overruling Ground 1 of defendant's Motion for Directed Verdict, which was as follows:

"1. The plaintiff has failed to establish the allegations of his Petition or any of them and has failed to sustain the burden of showing negligence alleged as against defendants, and his own freedom from contributory negligence and if, upon the whole record, the jury should return a verdict for the plaintiff, it would be the duty of the Court to set it aside for lack of sufficient evidence to support it."

It will be noted that in this ground of the motion for a directed verdict the defendants allege that a verdict should be directed in their favor because the plaintiff failed to sustain the burden of showing: (1) negligence alleged as against the defendants; and, (2) his own freedom from contributory negligence. It becomes necessary, therefore, to consider the condition of the evidence and the reasons alleged by defendants in support of their contention.

One of the grounds of negligence submitted to the jury was: "That the defendants' truck was then being driven on the westerly side of said primary highway, that is, on the left-hand side of the highway when going in a northerly direction." The ground of negligence thus submitted was substantially as alleged in plaintiff's petition. It is, of course, elementary that, in considering a motion to direct a verdict, the evidence and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to the party against whom the court is asked to direct the verdict. The only witness who testified for the plaintiff in regard to the facts and circumstances surrounding the accident was one Larson, the person who was riding with the plaintiff in his Ford automobile. The evidence shows that a

main line track and a switch track of the Chicago, Rock Island and Pacific Railway Company cross the paved highway a short distance southwest of the point where the accident occurred; that the most northerly of these tracks, and, therefore, the one nearest to the point of the accident, is 230 feet from the intersection of the paved highway with Iowa street; and that the southerly track is 276 feet distant from this intersection.

From the testimony of Larson the jury could have found that, as the Ford sedan came up on the pavement it was in low gear, and that the truck was then beyond or southwesterly from the railroad tracks, had not yet crossed either of the tracks, and that the Ford had plenty of time to get across the paved highway; that the Ford had reached the westerly or northwesterly side of the pavement, was turning in a southerly direction with its right front wheel a foot or so over on the gravel on the west shoulder and its back wheels about a foot or so across or west of the center line of the paving when its engine stalled; that when

INTERSECTION OF HIGHWAY No.18 (MILL ST.) AND IOWA ST. CLERMONT IA.

the Ford car reached this position Russell was rolling the starter trying to get it started; that at that time the truck was between the two railroad tracks; that from the time he saw the truck between the railroad tracks until it struck the Ford he would judge to be seven or eight seconds; that the truck struck the left rear wheel of the Ford; that just prior to the time the beer truck struck the Ford it was going up the middle of the street all the way up until it struck the Ford; that it appeared to be about half way on his side of the street, and Russell was rolling the starter right up to the time of the collision.

■■■ It is true that on cross-examination this witness was not as explicit as to the matters above set out as he was on direct examination, and that some of his answers might be considered as qualifying or even as contradicting some of the statements made by him on direct examination. We think it apparent, however, from all of his testimony, that this witness was not always able to express himself clearly; that some of the statements made in cross-examination, which appellants claim to be inconsistent with and contradictory of his previous testimony, can be given a different construction from that given to them by appellants; and that many of these alleged inconsistencies may reasonably be ascribed to the mental slowness and confusion of the witness. The conclusion to be drawn from the different statements made by the witness was for the jury. Haisman v. Knutson (Iowa), 222 N. W. 890; Wilkinson v. National Life Association, 203 Iowa 960, 211 N. W. 238; Faust v. Parker, 204 Iowa 297, 213 N. W. 794. The testimony of this witness is also attacked because, it is claimed, he was impeached by a showing of contradictory statements made by him a few minutes after the accident. Whether or not he was successfully impeached was a question for the jury. Windahl v. Hasselman, 198 Iowa 1001, 200 N. W. 583. Even if impeached, the weight to be given his testimony was for the jury to determine. Hess v. Dicks, 192 Iowa 378, 184 N. W. 742; Wilkinson v. National Life Association, 208 Iowa 246, 225 N. W. 242. We are satisfied that there was sufficient evidence in the record from which the jury could find that appellants' truck was traveling partially over on the northwesterly half of the pavement immediately preceding and at the time of the collision, and that there was no error on the part of the trial court in submitting the question of defendants' negligence in this regard to the jury.

■■■ II. The question of plaintiff's freedom from contributory negligence was raised as a part of appellants' first allegation of error relied on for reversal, and it is also raised by their second allegation of error relied on for reversal. It is the contention of the appellants that, in approaching and driving onto the paved highway, the plaintiff failed to stop at a stop sign on the right or northeasterly side of Iowa street 26 feet southeasterly from the southeasterly line of the paving; that, without stopping at this stop sign or at any point thereafter, he proceeded directly onto the pavement and in front of the truck of the defendants, which was approaching on its own right or southeasterly part of the paving; and that the collision was caused by the negligence of the plaintiff. Appellants argue that this appears affirmatively from the evidence and that, in any event, the plaintiff has failed to sustain the burden of showing his freedom from contributory negligence. In support of this contention the appellants cite and rely upon Hittle v. Jones, 217 Iowa 598, 602, 250 N. W. 689, 692. In that case, however, the driver of the car approaching the Primary Highway did stop at the stop sign, and it was held that he was negligent because he drove onto the Primary Highway at a speed of ten miles per hour, when he knew or ought to have known that another vehicle was approaching on the Primary Highway, at a distance of only 80 or 90 feet from the intersection, at a speed greatly in excess of ten miles per hour. In so holding, the opinion said:

"In determining whether the facts in a given case warrant the direction of a verdict on the theory of contributory negligence, two general propositions must be considered. They are: First, whether there is a conflict in the evidence as to what the one alleged to be contributorily negligent did or did not do at the time he was injured; and, second, whether there might fairly be different opinions with respect to the conduct of the one said to be guilty of contributory negligence, and one man honestly and reasonably would say that such conduct was in accord with ordinary prudence, while another, just as sincerely and with equal reason, would contend that such conduct was not prudent. Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N. W. 360; Perkins v. Schmit Construction Co., 215 Iowa 350, 245 N. W. 343. Under the facts in this record, when finally considered,

there is no dispute concerning what the appellant's intestate did as he approached and drove into the intersection. Consequently there is no jury question on this proposition.''

Under the evidence to which we have referred, in the preceding division of this opinion, it cannot be said, in the instant case, that there is no dispute in the facts as to what the plaintiff did when approaching and driving onto the intersection. The testimony of the witness, Larson, tends to show that the plaintiff had driven onto the pavement and across the black line in the center thereof, had turned in a southerly direction, and had reached a position entirely on the northwesterly half of the pavement where the right front wheel of his automobile was a foot or more out on the gravel shoulder and the rear wheels had passed over and were a foot or more beyond or to the northwesterly of the center line of the pavement when the engine stalled, and that, while in this position, and while trying to start the engine, the defendants' truck, while traveling on its left or the northwesterly half of the pavement, ran into the plaintiff's car. The defendants' evidence, on the other hand, is to the effect that, as the defendants' truck was approaching the intersection of Iowa street, after it had passed both railroad tracks and was only a short distance from the intersection, the plaintiff, without stopping at the stop sign, drove his automobile up to and onto the pavement directly in front of the defendants' truck, and that, notwithstanding every effort made by the two occupants of the truck to apply the brakes and turn to the right so as to avoid the collision, only one-half of plaintiff's automobile had crossed the center line of the pavement when the collision occurred. In the face of all this evidence, it can hardly be said that there was no conflict in regard to the facts surrounding the collision in this case. Conceding that plaintiff did not stop at the stop sign, or at any other point between the stop sign and the pavement, the evidence is such that the jury might find that at the time he drove onto the pavement the defendants' truck was some distance south of the most southerly railroad track, and that at the time his automobile had reached a point where it was entirely beyond and to the northwesterly of the center line of the pavement, the defendants' truck was between the railroad tracks. Such being the status of the evidence, we do not think it can be said, as a matter of law, that all

reasonable minds must agree that plaintiff's negligence in failing to stop before going onto the pavement contributed to cause the collision, or that the evidence was not such as to make the question of plaintiff's contributory negligence for the determination of the jury.

■■■ III. Appellants' third allegation of error is, that the trial court erred in overruling the second ground of the amendment to the motion for a directed verdict which stated, "that if the jury were to return a verdict for the plaintiff it would be the duty of the Court to set it aside for lack of sufficient evidence to support it." In the division of their brief and argument in support of this alleged error appellants contend that the evidence is not sufficient to support a recovery under the doctrine of the last clear chance, and that the question of defendants' negligence under this theory should not have been submitted to the jury. Conceding, for the purpose of the discussion of this phase of appellants' argument, that the plaintiff was guilty of contributory negligence, in failing to stop at the stop sign or before he went onto the pavement, we think the evidence was such that it was for the jury to determine therefrom whether or not the driver of appellants' truck saw the Ford sedan a sufficient length of time before the collision and knew that it was in or going into a place of danger, and that, by the exercise of ordinary care, he could have avoided the collision. In their argument in support of this allegation of error the appellants appear to assume that the court should take the facts and circumstances surrounding the accident as shown by their evidence. This, of course, is not the law, because it is for the jury to consider all the evidence. But, even if we confine ourselves to appellants' evidence, we think a fact situation was presented which made a question for the jury as to whether or not the appellants were liable under the doctrine of last clear chance. The evidence of appellants' witness, Finch, who was a county engineer and made plats of the scene of the accident and its vicinity, shows that it is 230 feet from the north railroad track to Iowa street, and that from the south railroad track to Iowa street is 276 feet. The testimony of this witness, taken in connection with the plats made by him, shows that, from property line to property line, both the Primary Highway No. 18 and Iowa street are 66 feet wide; that the pavement on Primary Highway No. 18 is 18 feet wide and is practically an equal dis-

tance from the property line on each side thereof; that along the left or southwesterly side of Iowa street, as it approaches the paved highway from the southeasterly, and along the southeasterly or right side of the paved highway, as it approaches Iowa street from the southwesterly, there is a lumber shed which is built out to the property line along the edge of each of these streets and which, with another building to which it is joined, extends along the southeasterly side of the paved highway almost to the first or most northerly of the railroad tracks. This building is such that it shuts off the view of the paved highway from persons in vehicles approaching the paved highway on Iowa street from the southeasterly, and it also shuts off the view of Iowa street from persons in vehicles traveling northeasterly on the pavement toward its intersection with Iowa street. In other words, persons traveling toward the pavement on Iowa street from the southeasterly cannot get a full view along the pavement to their left until they get beyond the corner of this building; and, likewise, persons traveling northeasterly on the paved portion of the highway cannot get a full view of Iowa street to their right until they go past the corner of this building. How far a person approaching the intersection from either of these streets can see a vehicle on the other depends upon where such person is with reference to being even with the corner of this building. Where the intersection of Iowa street with Mill street or Highway No. 18 begins, the right or southeasterly shoulder of the pavement is 7½ feet wide. At a point on Iowa street 20 feet east from the southeasterly edge of the pavement the travelled portion of Iowa street is 18 feet wide. From that point toward the pavement the travelled portion of Iowa street widens out on both the northerly and southerly sides thereof and, where this widened travelled portion of Iowa street meets the southeasterly edge of the pavement, it is 38 feet wide. From the point where the southerly edge of the travelled portion of Iowa street meets the edge of the pavement to the point where the center line of Iowa street intersects the pavement is approximately 22 feet; and from this last point to the point where the northerly edge of the travelled portion of Iowa street meets the pavement is approximately 16 feet. The evidence of this witness, in connection with the plats prepared by him and photographs presented in evidence, is such that the jury might find therefrom that the travelled portion of Iowa

street 20 feet southeasterly from the edge of the pavement is only slightly lower than the level of the pavement, and that an automobile going northeasterly on the pavement could leave the pavement and go out onto the travelled portion of the intersection at a point 22 feet southwesterly from the center of Iowa street, travel on the travelled portion of Iowa street to a point in the center line of Iowa street 20 feet southeast of the edge of the pavement, and then turn northwesterly and again reach the pavement at a point approximately 16 feet northeasterly from the point where the center line of Iowa street intersects the edge of the pavement.

The evidence of the appellants' witness, Reddy, who was riding in the truck along with the driver, Helms, is to the effect that, when he first saw the Ford automobile, it was coming up the approach to the highway off on the side street; that the truck remained on the cement until it turned out on the shoulder to avoid the plaintiff; that, after he saw the Ford car, plaintiff just kept driving up on the pavement; that the speed of the Ford as it went up toward the pavement was rather slow; that the truck was going about 25 to 30 miles an hour at that time; that he discovered the Ford was not going to stop when the truck was nearly to the intersection; that when the truck hit the plaintiff's Ford the right wheel of the truck was out on the shoulder two feet from the right of the cement and one-half of the plaintiff's car was west of the center line of the pavement; that after he saw that plaintiff's car was coming out on the paving the truck still continued on north at about the same rate of speed. The driver of appellants' truck, one Helms, was not present in court as a witness but it was stipulated that, if present, he would testify that, when the plaintiff's car first became visible, the truck was about 60 or 70 feet from the corner of the intersection with Iowa street.

We do not think that where the evidence shows, as this evidence shows, that the plaintiff's automobile was observed by the driver of appellants' truck when the automobile was approximately 22 feet from the edge of the paving and traveling slowly, while the appellants' truck was going 25 to 30 miles an hour; where the plaintiff's car had continued to approach the pavement and had reached a point thereon where half of it was across the center line of the pavement; where, while in that position, the rear fender and rear wheel of the plaintiff's car

were struck by the defendants' truck and the right wheel of the defendants' truck was only about two feet off the edge of the pavement; where the condition of the intersection was such that the truck might have been turned several feet to the right, completely off the pavement and over a travelled portion of a gravelled intersection, and then turned back onto the pavement, it can be said, as a matter of law, that the driver of appellants' car did not see the peril in which the plaintiff had placed himself in time to avoid the collision, and that, after seeing the plaintiff's car in this position of peril, he exercised the care which a person of ordinary prudence would exercise in avoiding the collision. But the appellants' witness, Reddy, further testified: "I first saw the Russell car *when it came from behind the lumber building* and approached the highway," and the stipulation as to what the driver of appellants' car, Helms, would testify to if present as a witness, and which was admitted as evidence, included the statement, "that he (Helms) was driving the truck and saw the Ford which Russell was driving *coming towards the highway from behind the lumber shed.*" (Italics are ours.) Moreover, a plat made by the appellants' witness, Finch, and introduced in evidence by appellants, shows that, from a point in the center line of Iowa street 22 feet east of the paving, there is an unobstructed line of vision to the southwest along the paving for 500 feet. If, as the evidence shows, the two witnesses who were in appellants' truck first saw the Russell Ford when it came *from behind the lumber shed,* the jury might well have found that their estimates as to the distance they were from the intersection, when they first saw the Russell Ford, were not correct, and that, as testified to by the plaintiff's witness, Larson, the appellants' truck was well beyond and to the southwesterly of the most southwesterly of the railroad tracks when the plaintiff's Ford came into view, and that at that time the plaintiff's Ford was not more than 22 feet from the edge of the pavement and continued onto the pavement without stopping. In such a situation, if, as all the evidence shows, the plaintiff's Ford was traveling slowly, and if, as shown by the appellants' evidence, it was halfway across the center line of the pavement when the collision occurred, it can hardly be said, as a matter of law, that the driver of appellants' truck did not see that the plaintiff's Ford was in a place of danger and that he could not, by the exercise of ordinary care, have avoided colliding with it.

It is our conclusion that, even if the testimony of the plaintiff's witness be entirely disregarded on this proposition, there was sufficient in the evidence presented by the defendants to make the question of the defendants' negligence under the doctrine of the last clear chance one that was properly submitted to the jury.

Finding no error in the grounds for reversal relied on by the appellants, the judgment and rulings of the trial court are hereby affirmed.—Affirmed.

HAMILTON, C. J., and MICTHELL, ANDERSON, KINTZINGER, STIGER, and SAGER, JJ., concur.