LENA WENDT, Appellant, v. ROSA FOSS, ET AL., Appellees.

**Wills:** ACTION TO SET ASIDE PROBATE: ISSUES: PLEADINGS. Where the petition in an action to set aside a will alleged that the instrument probated was not the will of deceased, and in support of the conclusion specifically alleged that it was procured by undue influence, and that decedent was of unsound mind, all other objections to the instrument which might have been raised were thereby eliminated, and the question of whether the will was in fact executed by decedent was not put in issue by the pleadings.

**Pleadings:** ISSUES: WAIVER OF VARIANCE. An issue not definitely pleaded may be regarded as in the case, where the parties by their evidence and conduct of the case treat the issue as having been made by the pleadings.

**Wills:** PROBATE: EFFECT: ACTION TO VACATE: EVIDENCE. The probate of a will is conclusive of its due execution until set aside in a proper proceeding; and the burden of proving that a will once admitted to probate was not executed as provided by law is upon the party attacking its validity. In the instant case the evidence of a single witness that he was constantly with testatrix for a stated period, except parts of two days, and that the will was not signed and witnessed during that time, was insufficient to overcome the presumptions arising from the apparent regularity of the instrument and its probate.

**Direction of Verdict:** WHEN PROPER: REVIEW ON APPEAL: The action of the trial court in refusing to submit an issue to the jury will be upheld in all cases where the court would have been called

upon to set the verdict aside, had one been returned in favor
of the complaining party.

Wills: MENTAL CAPACITY: EVIDENCE.    Evidence that a testatrix,
shortly before her death and several years after the making of
her will, stated that she wanted the illegitimate son of her daughter
to have her farm, that she did not know what was in her will
and was going to have it read, that she cried and did not want the
matter told while she lived, when taken in connection with the
fact that she had given the illegitimate grandson only $10. by her
will, that he had lived with her and her deceased husband all
his life, had worked for her and for others, giving her nearly all
his earnings, was not sufficient evidence of mental incapacity to
require submission of that issue to the jury.

Same.   Ordinarily proof of insanity at a given time will not justify
a finding of mental incapacity at some antecedent date, unless
from the nature of the disease it is apparent that the condition
must have existed for some time; as where the disease is of a
progressive type and must have existed in substantially the same
degree for some time past.

Same.   Proof of single instances of forgetfulness, both of fact and
of obligation, when standing alone are not sufficient to show
incapacity to make a will; but are admissible on that question
when taken in connection with other competent evidence on that
subject.

Same.   By the provisions of the will under consideration testatrix gave
$10. to an illegitimate grandson whom she had raised, $1000 to a
grand-daughter, and the balance of her estate she gave to her two
daughters, one seventh to one and six sevenths to the other. *Held,*
that under the circumstances disclosed the disposition of her prop-
erty was not so unnatural as to indicate mental incapacity.

*Appeal from Crawford District Court.*—HON. M. E.
HUTCHINSON, Judge.

SATURDAY, APRIL 12, 1913.

ACTION to set aside the probate of a will and to have the
same declared null and void because of mental incapacity and
undue influence. At the conclusion of plaintiff's testimony,

defendants moved for a directed verdict. This motion was sustained, and plaintiff appeals.—*Affirmed.*

*B. I. & L. H. Salinger* and *Ralph McLean,* for appellant.

*Conner & Lally,* for appellees.

DEEMER, J.—What purports to be the last will and testament of Henrietta Rath, deceased, was, upon due notice, admitted to probate in the district court of Crawford county on September 12, 1905; and this action to set aside the probate thereof, and to have the will declared null and void, was commenced October 29, 1909. The grounds for setting it aside, as stated in the petition, were:

Plaintiff further states that the said paper so admitted to probate was not the last will and testament of the said Henrietta Rath, deceased, for the reasons following, among others: That said will was procured by the undue influence of Rosa Foss, Ernest Foss, and Annie Foss, all three of whom directly exercised such undue influence over said decedent in the making of said will that it was not her voluntary act and free will. That at the time of the writing of said will, and for some time prior thereto, said decedent was subject to undue influence of said parties named, and that undue influence resulted directly in the said decedent making the said purported will, and the said will was the product of the undue influence, coercion, and duress of said parties named. That said decedent at the time of the writing and signing of said paper and for some time prior thereto was not of sound and disposing mind and memory and capable and able to make a will, nor of sufficient mind and memory to intelligently dispose of her property as contemplated by law, nor of sufficient capacity mentally to make a lawful will.

The answer admitted the probate of the will and denied each and every other material allegation in the petition. Upon these issues the case went to trial to a jury, with the results before stated.

Appellant contends that the court was in error in directing a verdict for the reasons: (1) That there was testimony tending to show that the will was never, in fact, executed. (2) There was sufficient testimony of mental incapacity to take that issue to a jury. (3) The court erred in striking out testimony of declarations made by testatrix and in refusing to receive evidence of the same character. (4) There was sufficient testimony of undue influence to take that issue to the jury.

The last of these propositions is not argued separately, but it is so bound with and related to the issue of incapacity that we may assume it is in the case. It may as well be said at the outset that we find no sufficient testimony to take the issue of undue influence to a jury. Whether or not there was enough to carry the issue of mental incapacity to that body, we shall consider in another paragraph of this opinion.

I. For appellant, it is contended that sufficient testimony was adduced to take the question of the making of the will to a jury. In other words, it is argued that there is testimony showing, or tending to show, that testatrix never, in fact, executed the paper which, it is claimed, is her last will and testament. Upon this proposition, appellee asserts: (a) That no such issue was made by the pleadings; (b) that there is no testimony to overcome the presumption arising from the probate of the will that it was properly executed.

The will, which was admitted to probate, bears date January 24, 1902, and it is witnessed by Albert Hellsley and Chas. C. Kemming; but there is no statement except by inference as to when the will was in fact witnessed by them. Inferentially, perhaps, it may appear that it was witnessed on the day it was signed. It disposed of testatrix's property, in the following manner:

I give devise and bequeath to Franz Rath whom I have raised the sum of ten ($10.00) dollars to be paid to him out of my estate by my executor hereinafter named he to have and to hold the same forever.

I give devise and bequeath to Annie Voss daughter of Ernest Voss the sum of one thousand ($1,000.00) dollars out of my estate, to be paid by my executor as soon as can be done after my decease, she to have and to hold the same forever.

All the rest residue and remainder of my estate after the payment of legacies hereinbefore bequeathed, I give devise and bequeath in manner following: To my daughter Lena Wendt wife of John Wendt one-seventh (1-7) of the remainder of my estate, and to my daughter Rosa Voss, wife of Ernest Voss, six-sevenths (6-7) of the remainder of my estate each to have and to hold (the respective 1-7 and 6-7 of real and personal estate remaining and bequeathed to them) the same forever.

Without objection, Frank (Franz) Rath was permitted to testify, as follows:

. . . My grandmother, Mrs. Rath, did not understand any English. During the month of January, 1902, I stayed with her, taking care of her because she was sick. I wasn't of age then. I was there three months. I was there all the month of January, 1902. I know Albert Hellsley and C. J. Kemming, or C. C. Kemming, Charles C. Kemming. They were never in my grandmother's house any time during the month of January, 1902. No will was made by my grandmother during that month. I was there all the time taking care of her except two afternoons I was with my uncle to town. Those two afternoons were quite in the first part of the month.

On cross-examination, he said:

. . . I say this will was not made in January, 1902. I am pretty sure about that. I am pretty positive that this will was not made when it purports to have been made. It wasn't made when it purports to have been made, and I know it wasn't because there was nobody there to make it. I just stayed there and camped right there by it. I never came away except the early part of January. I was away two days, not hardly that. Q. Otherwise and at all times during the month you know you were right there, Johnny on the spot. A. Yes, sir; Johnny on the spot. Q. And Albert Hellsley and Charley Kemming could not have been out there on the

24th of January, because if they had been you would have seen them, wouldn't you? A. I had ought to have seen them; I was not blind and I would have seen them if they were there.

This is the only testimony upon which appellant relies, as showing, or tending to show, that testatrix did not, in fact, execute the paper which was admitted to probate as her last will and testament; but counsel strenuously contend that it was sufficient to take the question of the due execution thereof to a jury.

We are constrained to hold that the pleadings, as filed, did not raise the issue of due execution. True, the petition alleges, as a conclusion, that the paper was not the last will and testament of Henrietta Rath; but it further proceeds to name the reasons for this conclusion, to wit, undue influence and mental incapacity. We do not overlook the fact that these reasons were selected from others, which, by reference, might have been relied upon; but the others are not stated, and, because of that fact, the fair presumption is that the pleader did not intend to rely upon them, feeling, no doubt, that those mentioned were sufficient. By the introduction of the words ''among others'' nothing was added to the reasons why the paper was not the last will and testament of the testatrix. In other words, the pleader selected, from among the various reasons which might occur to him, the ones upon which he desired to bottom his objections, and by this selection he must be bound. If this were not the rule, he could, upon appeal here, make any claim which would go to the validity of the will, such as that it was not properly signed or witnessed; was forged or altered; or canceled; or revoked. Surely such a construction should not be placed upon a pleading in which the pleader has selected and named his grounds of attack, choosing these from others which he might, but did not in fact, mention. It will be observed that the pleader first stated his conclusion that the paper was not the last will

1. WILLS: action to set aside probate: issues: pleadings.

of the deceased, and this was followed by his reasons for the conclusion, each stated specifically and with precision. The fair, if not necessary, inference is that, no matter what the other grounds for setting it aside, the pleader selected and named those upon which to base his attack. It is true the testimony, which we have quoted, was taken without objection, and it may be that defendants are precluded from .claiming that the issue was not in the case.

Under familiar rules, a case may be so tried as that an issue not squarely pleaded may be considered as in the case, for the reason that the parties tried it as if the issue were made, and this is the most that can be claimed for appellant. We are rather disposed to this view of the case, because one of the grounds of the motion to direct was that: ''There is no competent evidence to disprove the making of the will on the part of the testator.'' The trial court did not, in its ruling on this motion, indicate any view upon this ground, and it may be that it did not consider this issue raised by the pleadings. At best, the matter is left in much doubt and uncertainty.

2. PLEADINGS: issues: waiver of variance.

However, it must be remembered that the paper was admitted to probate as the last will and testament of Henrietta Rath, upon proper service of notice by publication and this order was entered more than four years before the commencement of this action.

Code, section 3296, provides that such probate is conclusive as to the due execution of the will, until set aside by an original or appellate proceeding. The effect of this statute is to place the burden of proving that the will, so admitted to probate, was not duly executed, as provided by law, upon the plaintiff. *Smith v. Ryan,* 136 Iowa, 335; *Milehan v. Montagne,* 148 Iowa, 476. The paper in question appears to have been duly executed as a will, and contains an attestation clause; and there is no testimony, whatever, to show that the signatures of the testatrix or of the subscribing witnesses are not genuine.

3. WILLS: probate: effect: action to vacate: evidence.

The order admitting the will to probate is in effect a finding that the will was duly executed, and was the testatrix's last will and testament. The only testimony offered by plaintiff to overcome this finding and the presumptions attendant upon it we have quoted, and this goes no farther than to show a possible or probable lack of opportunity for the making or rather the witnessing of the will by the subscribers thereto. This testimony may all be true, and still the will may have been properly executed and witnessed at a time when the witness who testified to lack of opportunity was not present, or even at some date not covered by his testimony. The exact date of the will is not, in itself, important, and there was no necessity for the proponents to prove, when the will was offered for probate, that it was either executed or witnessed on the day it was dated. Had this issue been submitted to a jury, upon the testimony we have quoted, and a verdict had been returned for the plaintiff, we think it would have been the duty of the trial court to have set such a verdict aside, because of insufficient support in the evidence.

Here we have a presumption, arising from the attestation clause, and, at least, a *prima facie* case, arising out of the probate of the will, and, as against it, nothing more than an inference of lack of execution, due to the fact that witness claims to have been with or so near testatrix during the month in which the will purports to have been executed, that he might have seen any witnesses who claim to have attested the making of the will, and that he saw none, during this month, although he admits that he was away from home, during two afternoons in that month, taking his uncle to town. Although admitting this opportunity for the making of the will, yet he affirms with all seriousness that the testatrix never made a will during that month. Surely the effect of the probate of the will should not be destroyed by such testimony.

We should not, of course, assume to act in place of a

jury upon any disputed question of fact; but it is our duty
to uphold the action of the trial court in
refusing to send the matter to a jury, in every
case where that court, in the performance of
its functions, would have been called upon to
set aside a verdict, had one been rendered in favor of the
complaining party.

4. DIRECTION OF VERDICT: when proper: review on appeal.

A mere scintilla of evidence no longer calls for the sub-
mission of a case to a jury. *Meyer v. Houck,* 85 Iowa, 319;
*Cherry v. Des Moines Leader,* 114 Iowa, 298. That there is
anything more than a mere scintilla in the testimony we have
quoted is not apparent.

II. There was no direct testimony of mental incapacity
or undue influence. Plaintiff relied upon evidence of declara-
tions of the testatrix, made both before and after the
execution of the will, as to what she intended
to do with her property; and upon the
unequal and unjust distribution thereof, made
by the will itself. In this connection, plaintiff offered the
following testimony: ''If this witness is permitted to testify,
we offer to prove by her, and expect to prove by her, the fol-
lowing matters: That about two weeks before the death of
the testatrix the witness met testatrix in Denison; that testa-
trix then said to the witness that she wanted Frank Rath to
have the farm; that she (testatrix) was going to see Mrs.
Timm, and have her go with her to the courthouse and have
her will read because she did not know what was in it; that
testatrix cried and said not to tell this to any one until she
died, because they would do her no good.'' It appears in
this connection that testatrix died early in the year 1905, and,
as will be observed, the will purports to have been executed
in the year 1902. The offered testimony was rejected, and an
offer to prove the same by many other witnesses was also
denied.

5. WILLS: mental capacity: evidence.

Before passing upon the correctness of these rulings, it
is well to note the other testimony in the case. It appears

that at the time of the making of the will testatrix was sixty or sixty-one years of age. Lena Wendt, the plaintiff, is a daughter of the deceased, and Frank Rath, to whom the sum of $10 was devised, is an illegitimate son of Lena, who took his grandmother's name, Rath. At the time the will was made, Frank was nineteen years of age. He went to live with his grandparents when very young and was supported, clothed, and sent to school by them. He did not learn of his true parentage until many years after he became a member of his grandparents' family. With his grandparents he lived until his grandfather died, in the year 1901, and after that with his grandmother, until her death. He worked upon the land owned by his grandparents, and, as he grew older, also worked for other people; but he gave to his grandparents substantially all of his earnings. He cared for his grandmother when she was sick and was always on friendly terms with her, and she declared, both before and after the making of the will, that he should have the eighty-acre farm, of which she died seised, upon paying to each of testatrix's two daughters the sum of $1,000 and the further sum of $500 to a granddaughter, the child of Rosa Foss. Testatrix knew that Frank had no property of his own, yet she gave him, by the will, but $10. Neither of testatrix's daughters had any property of their own, although Rosa's husband had eighty acres of land and a small amount of personal property. Testatrix was on friendly terms with her children and grandchildren. Both her children were married and each had a large number of children; one six, and the other fourteen. There is no testimony as to the circumstances of plaintiff's husband, although it indirectly appears that he owned some land, and there is no testimony as to the relations between testatrix and her granddaughter Annie, daughter of Rosa, save that testatrix always had her in mind as an object of her bounty. Aside from the offered testimony, there is nothing to show mental incapacity or undue influence, unless it be found in the facts just recited. The offer, in the first instance, was to show declarations of

the testator some two weeks before her death and nearly three years after the execution of the will, to the effect that she did not know how the will was made and a statement that she desired to see a Mrs. Timm in order to find out, coupled with a statement to the effect that Frank was to have the farm on paying $1,000. The most that could be claimed from this testimony is that the time the declaration was made, some three years after the making of the will, her memory was failing.

Sometimes presumptions will relate back, and proof of insanity, at a given time, will be sufficient to justify a jury in finding incapacity at some prior and antecedent date. As a rule, however, such presumptions do not relate back. Exceptions arise when, from the nature of the disease, it is apparent that the condition must have existed for some time in the past; as where the disease is progressive in type and has arrived at such a stage that it must have existed in substantially the same degree for some time in the past. There is absolutely nothing in the case, aside from these declarations, to show mental incapacity; and this lapse, if there was one, is not shown to have been anything more than temporary. Indeed, from proof of single instances of forgetfulness, it would be unsafe and illogical to say that this condition existed for any definite time in the past. No witnesses, either expert or nonexpert, testified to any facts tending to show insanity or unsoundness of mind at any time.

6. SAME.

The most that can be said is that there is testimony tending to show forgetfulness, both of fact and of obligation; but these do not, of themselves, show insanity or incapacity to make a will. One is justified in changing his mind, regarding the disposition of his property, by will, without being subject to the charge of insanity or mental incapacity. It should not be forgotten that Frank Rath is an illegitimate son of plaintiff, and this fact may have had controlling effect when testatrix came to make her will. Again, Rosa, the favored

daughter, seems to have been burdened with fourteen children, while her sister, Lena, had but six. The granddaughter Annie was evidently a favorite, for testatrix not only remembered her in her will, but had this in contemplation for many years.

Had there been other testimony of mental incapacity, the offered testimony would doubtless have been admissible. But it was not, in itself, evidence of either mental incapacity or undue influence. This has been so held in many cases, of which we need only cite the following: *Muir v. Miller,* 72 Iowa, 585; *In re Wiltsey Estate,* 122 Iowa, 423; *Trotter v. Trotter,* 117 Iowa, 417; *Casad v. Ripley,* 145 Iowa, 544.

7. SAME.

Testatrix's disposition of her property, under the circumstances disclosed, was not so unnatural as to indicate that it grew out of a disordered mind; hence the cases of *Howe v. Richards,* 112 Iowa, 220, and *Hardenburgh case,* 133 Iowa, 1, are not in point. Our conclusions on the whole case find support in *Kirsher v. Kirsher,* 120 Iowa, 337; *Glass v. Glass,* 127 Iowa, 646; *Fothergill v. Fothergill,* 129 Iowa, 93; *Perkins v. Perkins,* 116 Iowa, 253; *Spiers v. Hendershott,* 142 Iowa, 446; *Convey v. Murphy,* 146 Iowa, 154; *In re Kah,* 136 Iowa, 116; *Johnson v. Johnson,* 134 Iowa, 33.

8. SAME.

Finding no prejudicial error in the case, the judgment must be, and it is, *Affirmed.*