MILDRED EVANS, administratrix of estate of CHARLES EVANS, appellant, v. SHANNON HOLSINGER, appellee.

No. 47853.

(Reported in 48 N.W.2d 250)

992

J. R. McManus and A. R. Shepherd, both of Des Moines, and Neil McManus, of Keokuk, for appellant.

Hansen & Wheatcraft, of Des Moines, for appellee.

Thompson, J.—Involved in this action is the Iowa "guest statute", but no claim is made that plaintiff did not plead and prove a case requiring submission to the jury. No motion for directed verdict was made either at the close of plaintiff's evidence or at the end of all the evidence in the case. There are, however, other serious questions involved which require careful consideration.

Plaintiff's action was brought in a representative capacity. Her husband, Charles Evans, was killed in Polk County, Iowa, on the early morning of January 16, 1949, while riding as a passenger and guest in defendant's automobile; and she was duly appointed as administratrix of his estate. Decedent and defendant, accompanied by two young women, had, earlier in the evening, driven from Des Moines to Ames in defendant's car with defendant at the wheel. There is evidence that while there decedent and defendant did some drinking, both of whiskey and beer; and from some of the testimony it is possible to infer that defendant may have been somewhat affected by his potations. The party started from Ames for Des Moines about 2 a.m., and the fatal accident occurred shortly after they had crossed the Polk County line, perhaps fifteen or sixteen miles south of Ames. No other car was involved; defendant apparently lost control of his automobile, and after veering from side to side of the paved road several times it plunged across the shoulder on the left side of the high-

way and struck a telephone pole. Charles Evans was thrown from the car and almost instantly killed. There is testimony from which the jury would have been warranted in finding that defendant drove at a speed of eighty to eighty-five miles per hour much of the way south from Ames, and was so driving at the time of the accident. Further details of the evidence will be referred to in the various divisions of the opinion which follow.

█ I. Many of the grievances of which plaintiff complains herein were invited by her. Of course, she sued in a representative capacity, and under many circumstances her individual acts would not be binding upon her as administratrix. Her counsel cite many cases to this effect; but they are of little aid to her cause. Her pleadings, and her testimony as a witness were written and spoken in behalf of the estate. It is elementary that she is bound by her pleadings, and that the defendant was entitled to cross-examine, within reasonable limits, upon any matter which she had, by her direct testimony, introduced into the case. Likewise, he had the right to rebut, by proper evidence, any facts bearing upon the issues in the case which she had attempted to establish by her testimony or that of the witnesses called by her. Citation of authority here is unnecessary. Suffice it to say that she opened up some avenues of controversy down which the able counsel for defendant was glad to tread; and while there is much in the case which clearly has no proper place there, it is not so easy to say that defendant is solely at fault therein. There are, however, certain errors appearing which we think require reversal, and which will be pointed out.

█ From the record, much of the trial was concerned not so much with what happened to cause the fatal accident as with the chastity and fidelity of the plaintiff. Here Nicoll v. Sweet, 163 Iowa 683, 144 N.W. 615, Ann. Cas. 1916C 661, L. R. A. 1918C 1099, becomes of much importance. In this case it was held that the number and ages of the children of a decedent whose estate is suing for his wrongful death are properly admissible. It is also established in Iowa that under such circumstances it may be shown that the decedent was married. Wheelan v. Chicago, Milwaukee & St. P. Ry. Co., 85 Iowa 167, 52 N.W. 119. The reason given is that a married man is presumed to have more incentive to habits of thrift and industry and will therefore be likely to

accumulate a larger estate; and in Nicoll v. Sweet, supra, Justice Weaver, speaking for a majority of the court, held that the same principle applied in permitting a showing as to the number and ages of the children of a decedent father.

Upon this foundation, plaintiff testified without objection that she was married to Charles Evans on September 2, 1940; that he was born November 22, 1920; that they had two children, a daughter eight years old, and a son five. She testified that he had worked at various jobs, and as to the amount of his earnings; that he was in the service of the United States from August 1943 until August 1947, during which time he sent home $100 per month for his family; that he was a good provider and good to her and the children; that he was not addicted to the use of intoxicants; that when he came back from the service, jobs were scarce in their home town and he eventually went to Des Moines where he was employed as a bartender at the American Legion Club until the time of his death; and that "he came home to see me and the children and sent me money every week."

Upon cross-examination of plaintiff, defendant was permitted to bring out that in December 1947 she had consulted attorneys with reference to starting a divorce action against decedent; that she had on one or two occasions had him arrested for "non-support," and she was asked if she had not had another child in a Keokuk hospital in May of 1947. This she denied. Proper objection was made to the questions pertaining to the divorce matter ·only.

Defendant was then permitted, over plaintiff's objections, to show that she did, in fact, give birth to a baby in May 1947. One Carl P. Beard, an attorney of Keokuk, said that he had seen Mrs. Evans in the hospital there at that time, and had a conversation with her involving a baby girl of whom she was the mother. During the course of the controversy which this provoked, while the admissibility of the evidence was being argued in chambers, counsel for defendant told the court that they expected to prove by the witness that he was employed by persons interested in the adoption of the *illegitimate* child of Mrs. Evans; and that she disclosed to him that she was the mother of an *illegitimate* child born in Keokuk in May 1947. The actual testimony of the witness, before the jury, did not include the word "illegitimate"; the col-.

loquy in the judge's chambers is mentioned because it shows (if any proof were needed) defendant's real purpose.

The defendant was permitted to introduce into evidence, over the strenuous objections of plaintiff's counsel, a certified copy of a birth certificate, showing that a child had been born to Mildred Lucille Evans, at St. Joseph's Hospital, in Keokuk, Iowa, on May 16, 1947. However, on its own motion the court struck out, by cutting into and from one side of the exhibit, lines 10, 11, 12, 13 and 14, so that a hole about one inch wide by two and one-quarter inches long appears in the certificate. No explanation was given to the jury as to why this mutilation took place; nor are we advised by the record what was thus deleted. That it contained the data which appears on all birth certificates concerning the father of the child is apparent, at least to anyone familiar with such records. Whether the jury had this knowledge we do not know; and even if it, or some of its members, knew in a general way what had been removed, they would have no way of knowing what specific data concerning the father had been contained therein. Under such circumstances, imagination might readily outrun reality. The jury was, in effect, invited to speculate upon what had been deleted, and why. Defendant's counsel says that the plaintiff was benefited by the mutilation; but in the absence of any information as to just what was eliminated, we cannot join in this opinion. Nor can we agree that plaintiff "brought it on herself," so far as the deletion is concerned. Granting, arguendo, that the defendant had the right to show that plaintiff had not told the truth when she said that only two children had been born to her, if defendant chose to adopt this way of proving the birth of the third child, the whole of the certificate should have been admitted into evidence. The question naturally arises as to what was deleted. Did it show that Charles Evans was the father of the child? Or that it was some third party? Or that the father was unknown? It is said that: "Where a record offered in evidence is interlined, erased, or mutilated, the interlineations or erasures should as a general rule be fully and satisfactorily explained * * *." 32 C. J. S., Evidence, section 646, page 509. In 20 Am. Jur., Evidence, section 1037, the rule is thus stated:

"Necessity of Introducing Copy of Whole Record. Where a copy of public record is offered in evidence as proof of the facts

contained in the original, a party should, as a general rule, produce a copy of the entire record in question; otherwise, extracts or portions of them ordinarily will not be received. This rule is based upon the theory that the reading of the entire document is necessary in order to ascertain with certainty its real sense and meaning and that it would be unfair to permit one party to read only portions of the writing. This broad rule applies in all instances where a record is used as evidence to prove the facts therein contained."

The conclusion is inescapable that prejudicial error appears in the introduction into evidence of the mutilated copy of the record.

II. We are also of the opinion that the defendant was permitted to go too far in cross-examination of Mildred Evans, and in the introduction of so-called rebutting or impeaching testimony concerning the domestic relations of this witness and her husband, the decedent Charles Evans. It is of course true that her direct testimony went far toward opening the door to these things; but even so, the matter got entirely out of hand in so far as it had any proper relation to the real issues in the case. Because we must reverse for other reasons, and because we hope to lay down a rule for the guidance of trial courts in ruling upon the admissibility of this sort of testimony in the future, we do not find it necessary to specify what particular parts of the evidence here went beyond proper bounds in impeaching or contradicting the plaintiff. We call attention, however, to the record, which shows that the parties conducted a trial within a trial. Not only were the proper issues concerning the happening of the accident, the death of Charles Evans, and the liability of the defendant therefor examined, but the marital relations of the decedent and Mildred Evans were gone into at considerable length. We have in the record before us evidence that a divorce action had been contemplated; that plaintiff had filed criminal charges of "nonsupport" (presumably desertion) against decedent; of the extent to which he had supported his family; that they had been living apart for some time; that a third child had been born to plaintiff while they were so separated, with strong implications that it was not the child of the decedent; that a lawyer had called upon plain-

tiff at the hospital where the child was born for an undisclosed purpose, except that he was representing other parties (with the fair inference that his visit was in regard to an adoption of the baby) ; and the admission of defendant's counsel that their purpose in much of this was to show that the third child was "illegitimate." Counsel say that they were justified in this because plaintiff had shown that decedent was married, and that he had children. Following the rule that these things are proper because of the theory that a married man is more likely to be industrious and thrifty, and so to accumulate an estate; and that the same applies to the fact that he has children; they argue that they were entitled to show that he was not a *happily* married man, that there was family discord, and that one of the children was born under suspicious circumstances. This forces us to a consideration of the rules laid down in Nicoll v. Sweet, and Wheelan v. Chicago, Milwaukee & St. P. Ry. Co., both supra. In the first, we held that it was proper to show the number and ages of the children of the decedent whose estate is suing for his claimed wrongful death; and in the second, that it was likewise proper to prove his married status at the time of his death. In neither case, however, did we determine the limitations of the holdings; that is to say, the trial courts were left without any indication as to how far they might go in inquiring into questions of marital concord or discord, doubts as to the parenthood of the children, or other related matters which might arise. We feel that a definite determination should be made.

There has been considerable controversy about the rules in these cases, particularly in Nicoll v. Sweet. We held in Beems, admr. v. C., R. I. & P. R. Co., 58 Iowa 150, 12 N.W. 222, that evidence as to the number and ages of children was not material or proper. This was by a court divided three to two. In Nicoll v. Sweet the holding of the Beems case was, in effect at least, overruled; again by a divided court, with five justices against two. This has been the understood law in Iowa ever since. It should be noted, however, that in Cawley, admx. v. Peoples Gas & Elec. Co., 193 Iowa 536, 187 N.W. 591, which is sometimes cited as following Nicoll v. Sweet, the actual holding of the court was against it. Of seven justices participating in the decision, three voted to sustain an instruction telling the jury that it might "consider the

number and ages of his children, as bearing on the question of his incentive to industry." Three justices voted to reverse because they thought the instruction erroneous; while the writer of the opinion disapproved of the instruction, but thought it "not reversible error in the instant case."

It appears, therefore, that there has always been some doubt as to the propriety and soundness of the rule. We are not disposed to overrule Nicoll v. Sweet; but we also feel that definite limitations should be put upon the law there announced, and that it should not be further extended. The case under consideration shows the danger inherent in lack of limitation. It is not unfair to say that in this case the real issues were to a considerable extent obscured while the parties delved deeply into the marital relations of Mildred and Charles Evans, and that it was the plaintiff, as an individual, and her fidelity to her husband, that were really on trial. This danger seems to have been anticipated, to some extent at least, by the dissenting minority in the Nicoll case. In our opinion, what occurred here is not a sufficient reason for changing the rule, but it does furnish ample ground for limiting its application somewhat strictly. We hold that it is proper to show that a decedent whose legal representative brings suit for his alleged wrongful death was married, if such was the fact; and that the number, names, and ages of his children, if any he had, may likewise be given in evidence. But further than that the inquiry, either by the plaintiff or defendant, should not go. Whether or not the parties lived in a state of conjugal bliss, whether the husband was inclined, or had reason, to doubt his fatherhood of some or all of the children, and all other matters beyond the facts above indicated, are immaterial and should be excluded from the record.

We realize that there is some force in defendant's contention that the reason for permitting the showing of the decedent's married status and the number of his children being that under such circumstances he was more likely to accumulate an estate, having a greater incentive therefor, it should be permissible to inquire further into matters connected with his marriage, or his children, which would tend to negative such incentive. The difficulty with this position, however, is that there seems to be no practical stopping place. We have here defendant urging upon us our holdings

in Schnor v. Schnor, 235 Iowa 720, 17 N.W.2d 375, 157 A. L. R. 628; and Craig v. Craig, 129 Iowa 192, 105 N.W. 446, 2 L. R. A., N. S., 669, in which we held that in divorce cases adulterous conduct of one spouse might be such cruelty as to endanger the life of the other. From these it is argued that it was proper to show the claimed doubtful lineage of the third child in the Evans family, because the situation might have affected Charles Evans' life expectancy unfavorably. So, for that matter, might many other cruelties, if they were perpetrated. Under this theory, it would be necessary in this class of wrongful death cases to inquire into all details of the family life of the decedent, and to determine whether the surviving spouse had given him, or her, grounds for divorce upon the basis of cruel and inhuman treatment, with the jury left to determine whether the showing made was sufficient to justify a finding that decedent's health and life were endangered thereby. The many ramifications possible in this view require a limitation of the rule of Nicoll v. Sweet in the manner indicated above.

It is to be noted in passing that there is no showing that decedent knew or had any suspicion of the claimed illegitimacy of the third child; or, for that matter, even of its birth. Defendant says that it is decedent's state of mind, his belief as to the question of whether the child was in fact his, that is material. Here is cited Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1286, 300 N.W. 551. As an abstract proposition, this is correct; but in the absence of any evidence of decedent's knowledge or belief, it has no force here. In any event, the matter is immaterial in view of our holding in the two preceding paragraphs.

■ III. Plaintiff predicates error upon the claim that the trial court unduly emphasized, in its instructions, the burden resting upon plaintiff to prove something more than mere negligence; that is, recklessness. In view of the fact that this case must be reversed for other reasons, no detailed analysis of the challenged instructions, to which proper exception was taken, need be made. But we suggest that instructions 6, 8 and 12 are, in essence, duplicates. They repeat and emphasize the point, correctly stated in itself, set forth above. It is well-established that undue prominence should not be given, in the court's instructions,

1000

to any matter favorable to either side; and that correct statements of the law, if repeated to the point of such undue emphasis, may constitute reversible error. Each case depends upon its own facts when this error is charged, and we content ourselves with calling attention to the repetition in the three instructions above referred to, which will no doubt be avoided upon a retrial.

■ IV. Plaintiff challenges, and took exception to, the giving of instruction No. 11. It said: "You are instructed that outside of cities and towns under the circumstances of this case the driver of a motor vehicle is not required to drive on the right-hand side of the highway but may operate his car on either side of the road."

Plaintiff's petition alleged, as one ground of recklessness of the defendant, that he "drove said automobile at a very high rate of speed in a zigzag direction from right to left and from left to right across the road for a considerable distance immediately prior to the wrecking of said automobile." In its instructions, the court submitted to the jury, among other specifications, this: "In operating his car on the left side of the highway, on the left shoulder of the highway and zigzagging from side to side in the highway and driving off the highway into a telephone pole."

There was no evidence in the record justifying the submission of this specification of recklessness, since the only showing was that defendant's automobile crossed to the left side only after he had lost control of it. But plaintiff had embodied this charge in her petition, and took no exception to the inclusion of the specification in the instructions. She cannot now complain.

■ V. Instruction No. 13 told the jury that, if one voluntarily becomes a guest in an automobile knowing that the driver is under the influence of intoxicating liquor, he assumes the risk of accident. The instruction then properly places the burden of proof upon the defendant to establish by a preponderance of the evidence that decedent knew or in the exercise of due care should have known of defendant's intoxicated condition (if it be a fact); and tells the jury that, if they find such matters established by the evidence, and further find that decedent remained in the car as a guest voluntarily and without protest, and that the intoxicated condition of defendant (if they find he was intoxicated) was the proximate cause of the accident, then plaintiff could not

recover. This, plaintiff thinks, was error, asserting that there was no evidence that decedent had any opportunity to correct the situation, or to save himself, until the recklessness of defendant's way of driving became apparent. Here plaintiff mistakes either the record or the purport of the instruction. There was ample evidence that both Evans and Holsinger had been drinking considerably at Ames. This was of course known to Evans before he entered the car for the ride home. If, with this knowledge or means of knowledge, he chose to enter the car, and if defendant was in fact intoxicated, and the accident was caused by his condition as reflected in his operation of the automobile, then the doctrine of assumption of risk applies. There was no error at this point.

Other rulings challenged by plaintiff relate to reception of evidence and other matters not likely to arise upon a retrial.— Reversed and remanded.

WENNERSTRUM, C.J., and SMITH, BLISS, OLIVER, and MULRONEY, JJ., concur.

MANTZ and HAYS, JJ., concur in result.