DIANE LAW, a minor, by RICHARD G. LAW, her natural father and next friend, appellant, v. HANS FRANKLIN HEMMINGSEN and FRANCIS PUTNAM, dba PUTNAM SERVI-SYSTEM, appellees.

No. 48919.

(Reported in 76 N.W.2d 783)

MAY 9, 1956.

Robert M. Dippel, of Council Bluffs, and Charles E. Kirchner, of Omaha, Nebraska, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellees.

SMITH, J.—On February 29, 1952, plaintiff Diane Law (then 4 years old) was riding with her parents (Richard G. and Florence Law) in a southerly direction toward Council Bluffs, Iowa, on U. S. Highway 75. Her father was driving his 1941 two-door

Chevrolet automobile. His wife was sitting at his right and Diane was on the back seat. It was about 6:30 a.m. and a light snow was falling which stuck around the windshield wipers and covered the pavement from side to side.

At a point about one and one-half miles north of the city they collided with a 1948 International ton and a half truck or tank wagon coming from the south, owned by defendant Putnam and driven by defendant Hemmingsen, resulting in severe personal injury to Diane. The present action brought by her father as next friend seeks recovery therefor. (The father is referred to in the record as plaintiff but of course Diane is the real party in interest.)

At the close of the evidence the trial court sustained defendant's motion for directed verdict and this appeal results. The trial court found: "* * * that the uncontradicted evidence of the plaintiff alone * * * and of (other) evidence offered shows that there has not been established any acts of negligence on the part of defendant Hemmingsen * * *.

"Under the * * * condition of the record at the time that plaintiff rested his case, there can be no question * * * that the accident was brought about by getting his car at a 45-degree angle or more as it was skidding * * *, and that * * * the collision occurred in the lane of traffic in which defendant Hemmingsen was properly driving."

The petition specifies three grounds of negligence: Failure to keep proper lookout; failure to slow, change or divert the course of the truck so as to avoid the collision; and failure to yield the right of way to the Law car. The trial court expressed the opinion "there is only one charge * * * that could be submitted, and that is the charge of failing to yield the right-of-way, and * * * that specification has not been established so as to make a jury question, so the same cannot have been the proximate cause of the accident." We agree that is the principal question demanding our study; and of course we must view the evidence in the light most favorable to plaintiff.

The Law car was traveling down a slight grade and toward a gradual left turn to the east. Headlights were on. Windshield wipers were operating. Mr. Law applied his brakes as they saw

the truck approaching from the south. His car skidded, the front end turning to the right, and assumed a position diagonal to the travel lanes. Mrs. Law says "to a 45-degree angle." Mr. Law testifies the "rear end of his car went to the left, front end going onto the right or west shoulder"; also, "When he saw the other car coming toward him he started for the ditch but did not get to the ditch."

I. While the case is close and the record not too clear, a majority, at least, of the court thinks it sufficient to have generated a jury question. There is no testimony of any eyewitness except the occupants of the vehicles involved in the collision and unfortunately there seems little to be gleaned from testimony of pavement marks and the location of the vehicles immediately or shortly after. The probable or approximate location of the collision was shown by the debris but we cannot find it throws much, if any, light on the problem as to which lane of travel the collision occurred in.

The Iowa State Highway Patrolman (Keller) arrived about 8:30, two hours after the accident. He says the Law car was "damaged primarily on the left rear side and corner, the extreme back portion of the car. * * * It was in the ditch on the west side of the highway and to the north of the intersecting township road. * * * (It was) headed in a northerly direction with all four wheels off the traveled portion of the highway." He says "The left rear window was broken out with pieces of glass missing." He saw "no other marks or anything else of significance about the Chevrolet." He did not see any damage on its front.

This witness says the truck was sitting on the east shoulder off the highway headed north. He made no measurement but (on cross-examination) estimated it as approximately 150 feet north of the Chevrolet. "The damage on the truck was the left front consisting of the grill, front fender and left headlight." Based on the grouping of the debris the witness (on cross-examination) "places the actual point of impact as about in the center of the east lane of traffic", but also had already testified "It was more or less just scattered there and travel had spread it farther than perhaps it was in its original state."

The record says witness Keller identified exhibit 10 as a

blueprint of the highway from the State Highway Commission's office and agreed "there is a break or curve in the road at the culvert. Truck driver, Hemmingsen, going north would have to turn to his right * * * and a vehicle going south would turn to *his* left." (Emphasis supplied.)

An examination of the exhibit shows the curve referred to was slight but probably sufficient to sustain the conclusion elicited from the witness that "If the driver of the vehicle going to the north didn't follow the contour of the road * * * his line of travel would then take him onto the left side of the highway." A gravel township road from the west intersects the paved highway forming a T intersection near the culvert under the pavement. The culvert was marked with a white post with a black cap on it.

The testimony of Mr. and Mrs. Law, properly interpreted, would tend to prove definitely that the collision occurred in their right lane—the west lane—of travel. She says she first saw the headlights of the approaching vehicle "four or five car lengths away and at that time felt her car skid to the right." She says (on cross-examination) the truck was then on her side of the road about two and one-half feet, its left·side being in front of their car. She was asked: "Are you sure that the left rear corner of your car wasn't over the center line to the east at the time the two cars collided?" and answered "I am sure it wasn't."

Mr. Law's manner of speech was slightly less positive. He says the truck "looked like" it was over on the west side of the road. At one point, referring to whether the truck kept on its own side as it rounded the curve, he says, "I don't think he did." Again he says the truck lights "seemed like they were coming right toward his car"; and again he says "as far as he knows he doesn't think" his left rear was over the center line.

But he also testifies he said to his wife "Oh, my God! He is going to hit us!" and that "the other vehicle seemed to keep coming" toward the Law car. "At that time the defendant's truck was on" the Laws' side of the highway. Also: He did not see the lights turn or veer in any direction but rather continued to come toward him.

On cross-examination he testifies: "By the time he got 'Purnt'-near to the culvert the lights were on my side of the

road, on my half of the road." He says the collision occurred one or two car lengths north of the culvert—"probably might have been further than two car lengths from the culvert when he first saw the approaching lights."

We conclude there was evidence sufficient to make a jury question as to which side of the center line the actual impact of the two vehicles occurred. We of course express no opinion on the merits. It seems certain that when they collided the Law car was at an angle, headed toward the southwest. That would bring its left back corner which was struck by defendant's truck in the most vulnerable position.

When the truck hit its left rear or corner the Law car was spun to its left (counterclockwise) and it went halfway around so it headed north when it came to rest.

Probably much more of the record might be stated but we have attempted to give a fair summary of the parts favorable to plaintiff's contention. In the excitement attending an accident of this kind mathematical certainty and agreement among witnesses cannot be expected. It will be the duty of the jury upon a new trial to weigh the conflicting evidence carefully and impartially under instruction of the court.

II. It is apparent precedents are of little value in determination of questions of pure fact. In law actions tried to a jury the court has no such question. But there come borderline cases which require the court to study the evidence in order to decide whether it is of such weight as to submit the fact question to the jury.

It must be conceded our court has not always been consistent in the general rule it follows in such determinations. Many years ago it abandoned the so-called "scintilla" rule. Meyer v. Houck, 85 Iowa 319, 322 et seq., 52 N.W. 235; Ehrhardt v. Ryan Transport Corp., 245 Iowa 193, 198, 61 N.W.2d 696; Wendt v. Foss, 161 Iowa 122, 130, 140 N.W. 881.

Some of us think there has been in later years a tendency back to the earlier doctrine. However, there is frequently a close distinction to be drawn between a scintilla and evidence which though slight is yet of sufficient weight to be submitted to a jury. The border is not always easy to identify or even to agree on.

The general rule is variously stated. Perhaps as helpful as any is the statement in Carpenter v. Security Fire Ins. Co., 183 Iowa 1226, 1234, 168 N.W. 231, 233; Hayes v. Stunkard, 233 Iowa 582, 586, 10 N.W.2d 19.

In Carpenter v. Security Fire Ins. Co., supra, it is said: "If the theory which includes liability finds support—rational and reasonable support—in the evidence, the fact that reasonable minds might differ as to which of the two theories is better supported by the evidence does not justify the court in taking the case from the jury."

The testimony of Mr. and Mrs. Law clearly says the impact of the two vehicles was in their lane of travel. Whether they were right was a jury question.

The weight of testimony is for the jury notwithstanding contradictions or inconsistencies in the testimony of the particular witness. Twohey v. Brown, 246 Iowa 114, 118, 66 N.W.2d 870, 872; 88 C. J. S., Trial, page 208; Russell v. Leschensky, 224 Iowa 334, 338, 276 N.W. 608.

We think it is for the jury to appraise the testimony of a witness whose manner of speech is careful and who refers to a fact or a situation as it *seemed* to him, or who says he *thinks* a certain thing happened, instead of testifying positively without apparent reservation or doubt. The jury can detect whether such testimony is equivalent to or intended as positive testimony or really indicates some doubt in witness' mind as to his memory of the event or as to the dependability of his observation.

III. Appellant's argument is somewhat broader than is indicated in the foregoing but we deem it unnecessary to follow it. What we have said is sufficient to dispose of the appeal. The case is reversed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part.