HELEN MAXINE CHRISTENSEN, administratrix of estate of Raymond W. Christensen, deceased, appellant, v. GERALD KELLEY, appellee.

No. 51654.

(Reported in 135 N.W.2d 510)

June 8, 1965.

Rehearing Denied September 21, 1965.

J. R. McManus, of Des Moines, R. W. Cockshoot, of Atlantic, and Grant E. McMartin, of Harlan, for appellant.

George O. Hurley, R. E. Hines and Fred Louis, Jr., all of Harlan, for appellee.

LARSON, J.—Teen-age drivers are not always at fault when involved in an automobile accident. At least that was the decision of a Shelby County jury in an action at law for damages brought by the administratrix of the estate of Raymond W. Christensen, deceased, against Gerald Kelley, the father of Randall R. Kelley, age 16 years, who was the authorized operator of his father's car when it collided with the Christensen automobile.

Among various specifications of negligence in plaintiff's petition, it was alleged that defendant's operator failed to keep a proper lookout, failed to give an adequate warning signal of his approach, and failed to yield one half the traveled portion of the roadway when meeting another vehicle. The trial court refused to submit these issues to the jury, and its refusal to do so together with a charge of undue emphasis in the instructions on plaintiff's burden to prove freedom from contributory negligence are the assignments of error relied upon for reversal. The rules of law involved are not greatly in dispute, but their application to the evidentiary facts produced is the source of this controversy. We are inclined to believe the trial court was right.

From the record we learn this accident occurred on the 21st of December, 1960, at or near the crest of a steep hill on an east-west country road about five miles south and a half mile west of Elk Horn, Iowa. At this place the road had a rock or gravel surface 23 feet wide, and it was dry. At this time it was dark, about 7 or 7:15 p.m., and the weather was clear and cold. The plaintiff's decedent, with his family, in a 1955 Chevrolet four-door sedan approached the hill from the west, and defendant's son Randall Kelley with two passengers in the front seat of defendant's 1950 Chrysler four-door sedan approached it from the east. Kelley was driving between 25 and 30 miles per hour and, although the speed of the Christensen car was not shown, Mrs. Christensen said "it wasn't very fast." The investigating highway patrolman opined that speed was not a factor involved. No one in the Christensen car was aware of the presence of

another car in the vicinity just prior to the collision, but two of the occupants of the Kelley car had seen the reflection from the lights of the car approaching from the west. They testified Kelley then pulled entirely into his right lane and dimmed his lights. Due to the sharpness of the hillcrest there was only a brief interval after the headlights of the respective cars became visible before they came together. The Kelley car came to rest a little west of the crest of the hill facing south, with the rear end in the north ditch. The Christensen car traveled about 168 feet eastward before it left the highway on the south side, and then some 48 feet more eastward in the ditch. Its left front wheel was sheared off in the collision and a gouge mark appeared near the center of the roadway about 15 feet east of the Kelley car extending eastward some 12 feet where considerable glass and debris appeared in the eastbound lane of travel.

Perhaps we should first refer to some applicable general rules relating to the duty imposed by common law and by statute upon operators of motor vehicles in this state.

I. We have often said that the common-law duty to exercise ordinary care under the circumstances, irrespective of statute, rests upon a motorist at all times, that statutory rules of the road are cumulative, that they may enlarge but not abrogate this common-law duty, that they set a minimum, rather than a maximum, standard of care, and that compliance with a statute is not all that is required of a motorist. Mongar v. Barnard, 248 Iowa 899, 904, 82 N.W.2d 765, 769; Clayton v. McIlrath, 241 Iowa 1162, 1168, 44 N.W.2d 741, 745, 27 A. L. R.2d 307, 313.

Usually the question of whether a motorist breached his duty of exercising ordinary care under the circumstances, and whether his negligence in so doing was a proximate cause of the accident and injury of defendant, is for the jury, and in considering whether the circumstances require submission, the evidence must be viewed in a light most favorable to plaintiff. Law v. Hemmingsen, 247 Iowa 855, 857, 76 N.W.2d 783, 784; Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 196, 61 N.W.2d 696, 698, and citations; Hebert v. Allen, 241 Iowa 684, 687, 41 N.W.2d 240, 242.

However, in considering a motorist's duty to exercise

ordinary care not to injure or damage another rightfully using the highway, a motorist has a right to assume until he knew, or in the exercise of reasonable care should have known, otherwise, that other motorists would observe the law and exercise reasonable care—the care of a reasonably prudent man under the circumstances. Culbertson v. Anderson, 251 Iowa 265, 268, 269, 100 N.W.2d 633; Mathews v. Beyer, 254 Iowa 52, 56, 116 N.W. 2d 477, 479, and citations; Kuehn v. Jenkins, 251 Iowa 557, 563, 100 N.W.2d 604.

With these well-established rules in mind we shall consider the appellant's first three assignments.

II. Appellant contends the trial court erred in refusing to submit to the jury the issue of lookout. She maintains the evidence of Kelley's failure to exercise ordinary care under the circumstances in maintaining a lookout required such submission. We cannot agree.

Keeping a proper lookout is not a statutory duty in Iowa, but is a common-law duty imposed upon motorists to exercise ordinary care under the circumstances in maintaining a lookout. Miller v. Stender, 251 Iowa 123, 129, 98 N.W.2d 338, 342, and citations; Cunningham v. Court, 248 Iowa 654, 660, 661, 82 N.W.2d 292, 296, and citations.

Proper lookout, we have often said, implies being watchful of the movements of the driver's own vehicle as well as *the movements of the thing seen or seeable*, and involves the care, watchfulness and attention of the ordinarily prudent person under the circumstances. Kuehn v. Jenkins, 251 Iowa 718, 725, 726, 100 N.W.2d 610, 614, 615, and citations; Olson v. Truax, 250 Iowa 1040, 1048, 97 N.W.2d 900, 905.

Appellee contends, and the trial court found, there was no evidence of Kelley's failure to keep a proper lookout as required under our decisions. Of course, plaintiff had the burden to prove her allegations of a breach of duty in this regard by substantial evidence of sufficient weight to generate a jury question.

A careful review of the record reveals that, while young Kelley was aware of the presence of another vehicle in the vicinity prior to its appearance at the hillcrest, he actually saw its

position only an instant after it came into sight, and that this was too late to avoid the collision.

There was no evidence that the operator of the Kelley car was not watchful of the road ahead, of his position on the roadway as he approached the hillcrest, of the reflected light of the approaching car, or that he did not see it as soon as it was seeable. The only evidence which might infer a failure of defendant to be watchful of the movements of his own vehicle was the testimony of Mrs. Christensen that they were in their own right-hand lane as they came over the hillcrest just before the collision, and that the accident occurred in their right-hand lane of travel. See Hackman v. Beckwith, 245 Iowa 791, 802, 64 N.W.2d 275; Pazen v. Des Moines Transportation Co., 223 Iowa 23, 27, 28, 272 N.W. 126. However, she had been less sure of that statement in a former trial when she answered the question, "And you don't know whether you were on the south side of the road or the middle of the road?" by stating, "No, I wouldn't say for sure because I don't know." While, as we shall point out, this testimony might raise an inference that Kelley was not on his own side of the road as he came to the hillcrest in violation of the duty imposed upon him by section 321.364 of the Code, we do not believe it sufficient here to generate a jury question of his failure to maintain such a lookout. Indeed it cannot be said in every instance where there is any conflict in the evidence as to which side of the center line the plaintiff was driving at the time of the accident, an issue for the jury on lookout is presented. Ehrhardt v. Ruan Transport Corp., supra, 245 Iowa 193, 196, 61 N.W.2d 696, 698, and citations. Under the conditions here we feel the evidence might generate an issue as to the violation of the duty imposed by section 321.364 of the Code, but not the duty to maintain a proper lookout. We are satisfied here there was no evidence he did not see all that was seeable and was not watchful of his own movements up to the instant before the collision, which of course is the primary requisite of that duty.

Young Kelley testified, "As I approached the top of the hill I was in the north lane on the right side with relation to the center of the highway. I was looking straight ahead at that time and I observed the glare of the lights of the oncoming car as I

proceeded up the hill. As I approached the top of the hill, a car came over the hill and we collided." As to the time lapse after the other car became visible he said, "I have no idea of how much time elapsed from the time I first saw the automobile until the time of the collision. It just happened too fast. I took my foot off the accelerator and tried to turn to the right." Mrs. Christensen also said she did not know where they were when she first saw the Kelley car. She testified, "It just happened so fast. * * * I just seen the light and then, bang, that was it." A passenger in the Kelley car, the former Anna Mae Nelson, placed the Kelley car entirely in the north or right-hand lane of travel as they approached the hillcrest, and said she had seen the light reflection from the Christensen car as they started up the hill, and told "Randall to pull over and dim his lights", which he did. She also said, "As we neared the top of the hill and just like that, an instant, a car came over and hit us."

There were no circumstances shown which reasonably should have made Kelley aware of danger. He had a right to assume until the instant the other car came over the hill, that the driver of the approaching car would be watchful of his own movements and would be performing his duty under section 321.364 of the Code by driving upon his own right-hand lane of travel. Worthington v. McDonald, 246 Iowa 466, 475, 68 N.W.2d 89, 47 A. L. R.2d 135, and citations. In other words, as a reasonably prudent man Kelley had a right to assume the unseen approaching driver was obeying the law, and until, in the exercise of due care, he discovered otherwise an instant before the collision, he cannot be charged with failure to maintain a proper lookout. He could be and was charged with the failure to perform another duty, but this accident was not caused by a failure to keep a lookout. Clearly, the proximate cause of this collision and damage was a failure of one or both drivers to perform the duty required in section 321.364 for each to drive entirely in his own right-hand lane as he approached the crest of this hill.

Furthermore, the physical evidence is not too helpful to plaintiff. The left front of the vehicles came together. The left front wheel of the Christensen car broke off and was found near the center of the roadway. The gouge marks made by the axle

started near the center line of the road and drifted into the east-bound lane, indicating the collision actually occurred in the north lane. Plaintiff's car continued southeasterly some 168 feet until it rolled, while defendant's car stopped within 15 feet of the west end of the gouge mark, which of course would only appear after the impact which let the axle down. The photo exhibits indicate a glancing blow along the left side of defendant's car and no bumper damage, while plaintiff's car had damage both to bumper and the left front end.

III. Section 321.364, Code of 1962, provides: "The driver of a motor vehicle traveling through defiles or on approaching the crest of a hill or grade shall have such motor vehicle under control and on the right-hand side of the roadway and, upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway, shall give audible warning with the horn of such motor vehicle." This section clearly and concisely establishes the standard of care required of a motorist as he approaches the crest of a hill. The motorist's duty thereunder is clear and conclusive, and when performed satisfies the common-law duty to keep a proper lookout. Conversely, the violation of that duty might also violate the duty to keep a proper lookout. To that extent they relate to the same duty, and the proper submission of the issue as to violation of the duty established under section 321.364 makes unnecessary the submission of the issue of proper lookout.

This added reason why we believe it was not error in refusing to submit the issue of lookout is quite persuasive. The duty required of a motorist as he approaches the crest of a hill, found in section 321.364, is more specific than the common-law duty to maintain a proper lookout. It is reasonable to believe this statutory duty was meant to amplify and specify the operator's duty under these special circumstances. This being so, we think the failure to submit proper lookout as such was, at most, harmless error.

The principal factual issue involved was whether defendant's car was over the center of the highway. This issue was given to the jury. Thus, even if there was sufficient evidence that this accident happened on the plaintiff's side of the roadway, it

does not necessarily mean defendant failed in the lookout duty. Although it may be that the failure to keep a proper lookout could have been submitted under our cases such as Hackman v. Beckwith and Pazen v. Des Moines Transportation Co., both supra, which hold evidence of an accident happening on the plaintiff's side of the road is evidence of failure to keep a proper lookout, it is interesting to note under the circumstances revealed in such cases the defendant could legally be on the left side of the road if he turns to the right and yields one half of the traveled portion to oncoming traffic. Section 321.298, Code, 1962. Under such circumstances it may be necessary and usually is correct to submit the issue of lookout, for if defendant was on the wrong side of the highway at the time of the collision he must have failed to keep a proper lookout for oncoming traffic. Not so in the situation covered by section 321.364 of the Code, which requires motorists to drive entirely upon the right-hand side of the roadway when approaching a hillcrest. Here his duty is to yield one half the roadway regardless of other traffic approaching, seen or unseen, known or unknown. Its requirements are more strict and specific and seem to consider the situation here involved, when even if the motorist was keeping the best possible lookout he would still be violating this statutory duty if he proceeded over the hill in the center of the road, and only the latter duty obeyed by all would be sure to avoid a collision.

Since both issues depend upon the position of defendant's automobile in relation to the center of the highway, and as the performance of the duty imposed by section 321.364 would be more likely to safeguard the motorist, and as there are no special or different elements in this duty of proper lookout upon which the jury could render a verdict for plaintiff, we conclude the failure to give the instruction could not have worked any prejudice upon plaintiff.

In this view we believe it might have been more confusing to the jury if the issue of lookout had been given.

IV. Appellant next challenges the court's refusal to submit to the jury the alleged negligence of defendant's operator in failing to give an audible warning or signal of his approach to the crest of the hill. Appellant contends it was Kelley's duty, both

1330

under statutory and common law to sound such a warning, and that since he admits no such warning was given, the issue of proximate cause should have been submitted to the jury. Eclipse Lumber Co. v. Davis, 196 Iowa 1349, 1355, 1356, 195 N.W. 337, 340.

Section 321.364, Code of 1962, does not require the sounding of an audible warning on approaching the crest of a hill. The statutory duty to warn in this section is placed only on a motorist approaching any curve where the view is obstructed within a distance of two hundred feet along the highway.

Section 321.432, Code, 1962, provides in part: "* * * The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway." Appellant contends this section makes it the duty of the driver of a motor vehicle to give an audible warning with his horn when it is reasonably necessary to insure safe operation thereof, and establishes the standard of care necessary here. We discussed this section of the Code in Lawson v. Fordyce, 234 Iowa 632, 637, 12 N.W.2d 301, 304, and citations, and to the question, "What does the phrase 'to insure safe operation' mean?" we said, "It must mean operation of a motor vehicle in such manner as, in all reasonable probability, it will not injure the motorist and those riding with him, or any other persons or property *rightfully* on and using the highway." (Emphasis supplied.) As to the words "reasonably necessary", we said they mean the same standard of conduct a reasonably prudent person would use under the same circumstances, which is a rephrasing of the common-law requirement of due care under the circumstances.

 Appellant maintains the circumstances revealed by this record required the sounding of an audible horn warning by the operator of the Kelley car, but we cannot agree. As previously pointed out, the operator of the Kelley car had a right to assume the plaintiff's vehicle was being operated as required by law until he knew or in the exercise of reasonable care should have known otherwise. Section 321.364, Code, 1962, made it the duty of motorists in such situations to drive in their right-hand lane of travel. Kelley said he was so situated and, until the Christensen

vehicle actually appeared, he had no reason to believe it was not in its right-hand lane of travel and that there was impending danger. Nothing appears in this record to indicate the eastbound car was not in its own lane from the light reflection, or that its approach presented a danger requiring a warning signal. In other words, we find these circumstances did not require any duty beyond that provided in section 321.364 of the Code.

The time lapse after the plaintiff's automobile became visible was short. Mrs. Christensen herself said the collision occurred only an instant after she first saw the Kelley car. Thus there was no occasion prior to the time the cars came over the crest of the hill for sounding a horn, and no time after they became visible. A warning signal then would not have avoided the collision. The learned trial court was, therefore, correct in holding the evidence insufficient to raise an issue of failure to warn.

V. Appellant's next assignment complains of the court's failure to submit the issue raised upon the duty to yield, as set forth in section 321.298, Code, 1962. This section provides: "Persons * * * in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right." Appellant contends there was a conflict in the evidence as to where the accident happened and the issue then was for the jury. Beardsley v. Ostrander, 254 Iowa 356, 118 N.W.2d 61, and citations. However, in relation to the crest of the hill there is no dispute, for all parties say it was at or near the crest thereof. The real issue, then, was where it took place in relation to the center of the road, and the statutory duty to yield generally, and at hillcrests, is not the same.

The trial court correctly instructed upon the duty to yield at hillcrests as imposed by section 321.364 of the Code.

The legislature seems to have been aware of a situation which could arise when a motorist approached a crest of a hill where visibility was lacking, and no amount of lookout would reveal the impending danger if the motorist was not limited to travel in his own right-hand lane, as he is not under section 321.298. This case demonstrates that one could comply with section 321.298 and the common-law duty to maintain a proper lookout, and still be involved in a collision, for no matter how

alert the driver may be as he legally proceeds down the center of a highway, when another vehicle suddenly appears at the crest of a hill, there may be insufficient time for him to yield one half the traveled way and avoid a collision. Thus, there was a need for the duty imposed by section 321.364 which plainly requires *all* drivers, when approaching a hillcrest, to drive entirely in their right-hand lane and yield all the rest of the road to others. Had both drivers done so here, there would have been no collision. Furthermore, there is merit in appellee's argument that if an instruction as to the duty provided by section 321.298 had been given, it would have confused the jury, for under that section, until the vehicles had become visible, the jury might have believed the entire traveled portion of the highway would have been available to the vehicle operators.

As we see it, the vital factual issue was, did either or both operators fail to perform the duty prescribed in section 321.364? That issue was properly submitted to the jury in instruction No. 7.

We conclude that under the circumstances revealed in this record the duty to yield was governed by section 321.364 rather than section 321.298 of the Code, and there was no error in the court's refusal to submit an issue as to violation of the latter.

VI. Appellant's final assignment contends the trial court, over her objections, placed undue emphasis on the issue of contributory negligence by frequent reference to plaintiff's duty to prove freedom therefrom. While as a general proposition the giving of instructions which overemphasize an issue and give it undue prominence may constitute prejudicial error and thus deprive a party of a fair trial, we do not find such to be the case here. Of course, each case must be decided upon its own facts. Evans v. Holsinger, 242 Iowa 990, 1000, 48 N.W.2d 250, 28 A. L. R.2d 1434.

Appellant contends the overemphasis appears in instructions Nos. 5, 6 and 10, each of which refers to the plaintiff's burden to prove freedom from contributory negligence. Instruction No. 5 told the jury the items plaintiff must prove to recover. Instruction No. 6 explains plaintiff's burden to prove all material matters by a preponderance of the evidence, and instruction

No. 10 told the jury what it should do if it found defendant not negligent and what it must further determine if it found defendant negligent. Reference to contributory negligence in each instruction was proper, and there is no contention any of these instructions themselves were erroneous.

After careful consideration of all the instructions, we are satisfied there was no more frequent reference to this subject than was required by the matters then under discussion. See Young v. Blue Line Storage Co., 242 Iowa 125, 133, 44 N.W.2d 391; Snakenberg v. Minneapolis & St. L. Ry. Co., 194 Iowa 215, 222, 188 N.W. 935. Particularly applicable, it is said in the latter case: "Complaint is made * * * that the court in its instructions called the jury's attention too frequently to the question of contributory negligence. This case is one involving the question of negligence and contributory negligence, and of necessity demanded frequent reference to these matters in the instructions. The frequency with which the instructions make reference thereto is not a ground for reversal, if the law in each instance was correctly stated." This, of course, does not mean undue or unnecessary repetition is without prejudice. Also see Rhoades v. Finn, 288 Mich. 262, 284 N.W. 720, and 5A C. J. S., section 1769, page 1233. We cannot say under this record any prejudice resulted from the court's references to contributory negligence in these instructions. As bearing on this matter, also see Jaeger v. Hackert, 241 Iowa 379, 41 N.W.2d 42; Ashby v. Nine, 218 Iowa 953, 256 N.W. 679.

VII. After careful consideration of the issues raised in this appeal and the well-presented arguments of counsel, we conclude no reversible error appears and the judgment must be affirmed.—Affirmed.

HAYS, PETERSON, SNELL, MOORE and STUART, JJ., concur.

THORNTON, J., concurs specially.

THOMPSON, J., and GARFIELD, C. J., dissent.

THORNTON, J. (concurring specially)—I concur in the result. It is improper for us to weigh the evidence as is done in Division II of the majority opinion.

1334

THOMPSON, J. (dissenting)—I fear that Division II of the majority opinion makes the court the trier of the facts rather than the jury. It appears to me there was substantial evidence, rather than a mere scintilla, which supported the plaintiff's position.

Upon the question of lookout, we have held that when there is evidence that one party was driving on his left-hand side of the road, lookout is necessarily involved. Hackman v. Beckwith, 245 Iowa 791, 802, 803, 64 N.W.2d 275, 282; Pazen v. Des Moines Transportation Co., 223 Iowa 23, 27, 28, 272 N.W. 126, 129; Spry v. Lamont, 257 Iowa 321, 329, 132 N.W.2d 446, 451.

The facts here also seem to have required a submission of the specification of negligence based on the defendant's failure to sound his horn as he approached the blind crest of this hill. He had seen the lights of the other car approaching from the opposite direction; and a warning of his own presence could well have been found advisable; indeed, such a precaution as an ordinarily prudent person would take in the exercise of due care.

I conclude the plaintiff did not have a fair trial, and would reverse.

GARFIELD, C. J., joins in this dissent.